UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABEL HERNANDEZ,

       Plaintiff,

 -against-

DONALD SELSKY, et al.,

       Defendants.

06 Civ. 4399 (RJH)

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff Abel Hernandez brings this Section 1983 action against two employees[1] of the New York State Department of Correctional Services ("DOCS"). Hernandez alleges that defendants deprived him of due process of law in connection with two 2005 prison disciplinary hearings, which resulted in Hernandez's confinement for 220 days in the Special Housing Unit ("SHU"). The dispositions of both hearings were eventually reversed administratively by the DOCS' Director of the Special Housing/Inmate Disciplinary Program. Defendant Lieutenant W.G. Russett, who is now retired from DOCS, was the hearing officer who conducted both disciplinary hearings. Defendant Correction Counselor Miriam Cruz was plaintiff's assistant and Spanish language interpreter during the hearings. Before the Court is defendants' motion for

---

[1] The complaint names six defendants, but in response to defendants' motion for summary judgment, Hernandez has moved to amend his complaint to withdraw his claims against defendants Selsky, Dubray, MacIsaac, and Austin. Defendants do not oppose this request. Defs.' Reply 1 n.1. The Court therefore dismisses the claims against Selsky, Dubray, MacIsaac and Austin pursuant to Federal Rule of Civil Procedure 41(a). Only plaintiff's claims against defendants Russett and Cruz remain.

summary judgment. For the reasons that follow, summary judgment for the defendants is granted.

## BACKGROUND

During early 2005, plaintiff was incarcerated at New York's Green Haven Correctional Facility ("Green Haven"). On January 25, 2005, Correction Officer Jeffrey MacIsaac recovered an ice pick from behind the base of the toilet in plaintiff's cell. (Defs.' 56.1 Statement ¶ 4.) That same day, MacIsaac issued Hernandez an Inmate Misbehavior Report (IMR) for possessing contraband that can be classified as a weapon. (Selsky Decl. Ex. A, DH 2/23/05 12.) MacIsaac described the weapon as a metallic ice pick, 9 ½ inches long and ¼ inch in diameter, that was sharpened to a point at one end. (*Id.*) As a result of the IMR, plaintiff was confined to the SHU pending hearing. (Defs.' 56.1 Statement ¶ 5.) Cruz was assigned to assist Hernandez during the hearing since Hernadez spoke little English and was in SHU confinement. Hernandez requested a photocopy of the weapon, certain written reports, and information regarding which officers were present during the search of his cell. (Cruz Decl., Ex. B DH 2/23/05 18.) Hernandez also requested that Cruz interview MacIsaac as a potential witness for the hearing. (*Id.*) Cruz provided Hernandez with certain reports in advance of the hearing and advised him that he would receive a photocopy of the weapon at the hearing. (*Id.*) Cruz did not interview MacIsaac in advance, as she understood from her training that it was the general practice of staff assistants not to conduct pre-hearing interviews of prison staff when they were available to testify at a hearing. (Cruz Decl. ¶ 7.)

The hearing began on January 31, 2005, and was adjourned several times by Russett due to the unavailability of witnesses, documents, and an interpreter. (Defs.' 56.1

2

Statement ¶ 12–13; Nowve Decl. Ex. A at DH 2/23/05 30.) At plaintiff's request MacIsaac, Sergeant Ullrich, and Corrections Officers McGill and Purcell testified at the hearing. (Defs.' 56.1 Statement ¶¶ 14–15; Nowve Decl. Ex. B (Deposition of Abel Hernandez, Dec. 4, 2006) ("Hernandez Tr.") 22.) McGill and Purcell testified that they were present during the search, although they did not file or endorse misbehavior reports. (Selsky Decl. Ex. B at DH 2/23/05 6; Nowve Decl. Ex. A at DH 2/23/05 at 44–48, 121–33.) Sergeant Ullrich authorized the search of plaintiff's cell on the basis of "confidential information." (Nowve Decl. Ex. A at DH 2/23/05 27.) Russett denied plaintiff's request to learn the identity of, or question the confidential informant(s) whose information had led to the search of the cell on the grounds that "it would present a danger to them." (*Id.* at DH 2/23/05 27.) Ullrich did testify at the hearing and plaintiff was given the opportunity to ask Ullrich questions. (Hernandez Tr. 22; Nowve Decl., Ex. A at DH 2/23/05 9.) Russett also denied as immaterial plaintiff's requests to present an inmate witness who would have testified as to the number of officers who searched the cell, and to have his cell photographed. (Nowve Decl. Ex. A at DH 2/23/05 15.) On Feburary 23, 2005, Russett found plaintiff guilty of possessing the ice pick on the basis of MacIsaac's IMR and his hearing testimony. (Selsky Decl. Ex. A at DH 2/23/05 10.) On May 10, 2005, the hearing disposition was administratively reversed because "the circumstance of the incident, including condition of weapon and the manner in which it was found, raise[d] question[s] about inmate's responsibility for item found." (Selsky Decl. Ex. B at DH 2/23/05 1.)

On April 3, 2005, Hernandez received a second IMR for the recovery of a razor blade from his cell in the SHU where he was confined as a result of the ice pick incident.

(Selsky Decl. ¶ 6.) Officer Austin issued the report after discovering the contraband when ordered to search the cell by Sergeant Matyas. (Hernandez Tr. 34.) The razor was found attached to dental floss and hidden on the underside of the cell gate's track. (Defs.' 56.1 Statement ¶ 6.) After Plaintiff was given notice of the charges, Russett commenced a second Tier III hearing on April 8, 2005 to address charges against Hernandez for the razor blade recovery. (*Id.* ¶ 21-22.) Cruz again served as plaintiff's assistant and interpreter during the hearing. (Cruz Decl. ¶ 4.) Plaintiff requested that Cruz interview three inmates, E. Smith, R. Green, and C. Dellarosa, as well as Officers Matyas and Austin, prior to the hearing. (Cruz Decl. Ex. B at DH 4/20/05 24.) Cruz interviewed all three inmates, who all agreed to appear as a witness at the hearing on Hernandez's behalf, but did not interview Matyas and Austin based on her understanding that correction counselors do not normally interview members of the prison staff prior to a disciplinary hearing when such witnesses are available to testify at the disciplinary hearing. However, neither officer was requested to testify at the hearing by Hernandez or Russett. (Nowve Decl. Ex. A at DH 4/20/05 14.) Hernandez requested, and Cruz interviewed, a prisoner identified on the Assistant Form as "E. Smith" in cell SHU 32. (Cruz Decl. Ex. B at DH 4/20/05 24.) At the hearing, it was discovered that plaintiff intended to request another inmate named "Smyth," who was found and testified at the hearing. (Cruz Decl. ¶ 9.) On April 20, 2005, Russett found plaintiff guilty of possessing a weapon and an altered item, imposing penalties that included extending SHU confinement until January 20, 2006. (Selsky Decl. Ex. A DH 4/20/05 13.)

On June 10, 2005, the finding of guilt from the razor hearing was initially affirmed but later reversed and the record expunged upon reconsideration by Donald

Selsky on November 7, 2005 after consultation with the Attorney General's Office; the reversal resulted from unspecified "issues involving assistance for plaintiff at the hearing." (Selsky Decl. ¶ 9, Ex. B DH 4/20/05 1-2.) Plaintiff was released from SHU on September 2, 2005, having spent 220 days there, before the reversal of the charges from the ice pick and razor blade incidents. (*Id.* at ¶ 10.) Plaintiff petitioned the Supreme Court of the State of New York, Dutchess County for judicial review of the June 10th affirmation, but the petition was dismissed as moot on December 5, 2005 given the subsequent administrative reversal upon reconsideration. (Nowve Decl. Ex. A DH 4/20/05 47-48.)

## DISCUSSION

### I. Legal Standards

Summary judgment may be granted on plaintiff's due process claims if the evidence, viewed in the light most favorable to the plaintiff, shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ P. 56 (c); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004).

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Nevertheless, the Supreme Court and Second Circuit have identified several procedural safeguards to which inmates are constitutionally entitled when faced with disciplinary charges that could result in confinement imposing significant, atypical hardship.[2] These

---

[2] *See*, *Sandin v. Conner*, 515 US 472, 484 (1995). For the purposes of this motion only, defendants concede that plaintiff's aggregate confinement in SHU for 220 days constituted an atypical and significant

5

rights include (1) advance written notice of the disciplinary charges; (2) a reasonable opportunity to call witnesses and present evidence at a hearing; (3) a fair and impartial hearing officer; (4) a written statement of disposition, including findings of fact and the reasons for the disciplinary action; and (5) support by "some evidence" of any conviction. *Wolff v. McDonnell*, 418 US at 563-67; *Superintendent v. Hill*, 472 445, 455 (1985). In addition, while there is no right to counsel, prison officials have a constitutional obligation to provide assistance to an inmate "in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988).

In ruling on a summary judgment motion based on qualified immunity, a court must perform a two-part test. *Sira*, 380 F.3d at 68 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). First, the court asks "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation." *Id.* If the evidence establishes a constitutional violation, the court then asks "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*; *see also Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (stating that qualified immunity bars the claim if a reasonable officer "objectively and reasonably believed that he was acting lawfully").

"[P]ublic officials . . . are protected by qualified immunity from civil liability for actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant." *Morris-Hayes v. Bd. of Educ.,* 423 F.3d 153, 158 (2d Cir. 2005). A "clearly established" right is one that is "recognized in a particularized rather than a general sense. In other words, it is not enough that a general

---

hardship distinct from the ordinary incidents of prison life such that plaintiff has made a "threshold showing" that he was entitled to procedural due process protections. (Defs.' Memo. 8-9, citing *Espinal v. Goord*, 180 F.Supp.2d 532, 537 (S.D.N.Y. 2002).

right to due process is clearly established by the Constitution." *Sira*, 380 F.3d at 81; *see also Young v. County of Fulton*, 160 F.3d 191, 197 (2d Cir. 1998) ("A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.") (citations, quotations, and brackets omitted); *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986) (requiring an appropriately direct prior holding by federal courts as a prerequisite to finding "clearly established" rights). Looking to *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Second Circuit explained that "[t]he 'contours' of that right, as they pertain to a particular issue – for example, the identification of what qualifies as some reliable evidence in prison disciplinary proceedings – must have been delineated with sufficient clarity 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* "Hence, a defendant is not liable if he did not violate clearly established law *or* it was objectively reasonable for him to believe that he was not violating clearly established law." *Luna*, 356 F.3d at 490 (citing *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001)).

**II.     Plaintiff's Claims**

Plaintiff alleges two kinds of constitutional violations arising out of his two prison disciplinary hearings. First, he claims that in both hearings, the decisions of the hearing officer, defendant Russett, were not supported by "some evidence" in the record. (Pl.'s Memo. ¶¶ 1-2.) Second, he claims that defendant Cruz's failure to interview certain staff witnesses in advance of his disciplinary hearings deprived him of his limited right to assistance under the Due Process Clause. (Pl.'s Memo. ¶ 6-10.) Because defendant

Russett placed plaintiff in SHU confinement on the basis of "some evidence" before him in the proceedings and because defendant Cruz performed tasks as an assistant to plaintiff in good faith that plaintiff, were he able, could have performed himself, the facts viewed in the light most favorable to him do not establish a constitutional violation. Additionally, the Court finds that both claims against defendants are barred by qualified immunity.

### III. Whether Russett's Decisions Were Supported by Some Evidence

Plaintiff contends that Russett imposed SHU confinement on him twice without sufficient reliable evidence to support that disciplinary action, thereby depriving him of due process of law. (Hernadez Aff. ¶ 3.) He premises this claim on the fact that both disciplinary hearings were ultimately administratively reversed, with one resulting from questions concerning plaintiff's responsibility for the contraband item. (Pl.'s Memo. ¶ 3.) However, the critical inquiry is not whether the disciplinary decision was correct but whether the decision when made met the requisite evidentiary standard required by law.

In *Sira v. Morton*, the Second Circuit held that "prison discipline decisions . . . must be 'supported by *some evidence* in the record.'" *Sira*, 380 F.3d at 76 (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)) (emphasis added). The "relevant question" in reviewing such decisions is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)). Nevertheless, the "some evidence" standard requires some "reliable evidence." *Sira*, 380 F.3d at 76 (citing *Luna v. Pico*, 356 F.2d 481, 488 (2d Cir. 2004). In *Gaston v. Coughlin*, the Second Circuit held that

"the 'some evidence' standard may be met even where the *only* evidence was supplied by a confidential informant, 'as long as there has been some examination of indicia relevant to the informant's credibility.'" 249 F.3d 156, 163 (2d Cir. 2000) (citing *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1993)) (emphasis added, brackets removed). The "minimum requirements of procedural due process" are therefore satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record," even when they amount only to a "modicum" or are "meager." *Superintendent v. Hill*, 472 U.S. 445, 454-55, 457 (1985).

In the case at hand, it is clear from the uncontroverted facts that Russett did have "some evidence" before him in both disciplinary proceedings "that *could* support the conclusion[s] reached," *Sira*, 380 F.3d at 76 (emphasis added), specifically, that corrections officers had found weapons in plaintiff's cell. Plaintiff did not and does not present any evidence to suggest that the weapons were not found in his cell. Rather, plaintiff's position is that Russett drew the wrong conclusion from this evidence given where the weapons were found in his cell and their condition. That corrections officers reported finding prohibited items in a cell occupied by the Plaintiff in both instances is sufficient to meet the broad standard set forth in *Hill* for determining whether a constitutional violation occurs in a prison disciplinary proceeding. *See Hill*, 472 U.S. at 456-57 (finding that three inmates fleeing from the scene of an assault was sufficient evidence to show that each had participated); *Robinson v. Warden*, 250 Fed. App'x 462, 464 (3d Cir. 2007) (stating that mere finding of prohibited items inside sealed prisoner's secured wall locker constitutes "some evidence" sufficient to justify disciplinary actions despite prisoner's claim that Bureau of Prisons failed to establish ownership); *Santiago v.*

9

*Nash*, 224 Fed. App'x 175, 177 (3d Cir. 2007) (holding that needle found beneath prisoner's bed constitutes sufficient evidence despite prisoner's claim that he had no knowledge of its presence); *McClung v. Hollingsworth*, 2007 U.S. App. Lexis 9558 (4th Cir. 2007) (finding that a weapon discovered in a prisoner's cell meets "some evidence" standard even though cell was unlocked); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (holding that contraband found among prisoner's belongings not in his actual possession constitutes "some evidence"); *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (finding "some evidence" standard met where contraband was found in a four-person cell).

Assuming, *arguendo*, that a constitutional violation occurred, plaintiff's claim still fails because Russet is entitled to qualified immunity. Based on the admitted facts, Russet's hearing determinations comported fully with "clearly established rules then extant" – in conformity with the "some evidence" standard and Russett made his decision to place plaintiff in the SHU based on reliable materials he had before him during the hearings. (See Selsky Decl. Ex. A. DH 2/23/05 10, DH 4/20/05 15.) Because there is no contention that Russett's conduct was objectively unreasonable "in light of legal rules that were 'clearly established' at the time of his actions" – indeed, Russett quite obviously followed procedure – nor is it "clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Sira*, 380 F.3d at 68 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)), defendant is entitled to qualified immunity with regard to plaintiff's sufficiency challenge.

## IV. Whether Cruz Provided Plaintiff Adequate Assistance

Plaintiff claims he was not afforded adequate employee assistance by defendant Cruz because she did not interview Officer MacIsaac or Officers Matyas and Austin prior to his respective hearings, thereby depriving him of due process. Plaintiff asserts that Cruz was required to interview and obtain written statements from the officers by citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 251-4.2,[3] and claims that the failure to do so left him unable to adequately prepare a defense.

The state has a "clear constitutional obligation, pursuant to the Due Process Clause of the 14th Amendment, to provide assistance to an inmate 'in marshaling evidence and presenting a defense when he is faced with disciplinary charges.'" *Pilgrim v. Luther*, 2007 WL 233203, *4 (S.D.N.Y. 2007) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988)). Where, as here, an inmate is already confined to SHU, the obligation to provide assistance is greater as the inmates' ability to prepare a defense is reduced. *Id.* "[A]n assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988). "The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding," *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993), but "the assistance must be provided in good faith and in the best interests of the inmate." *Eng*, 858 F.2d at 898.

---

[3] § 251-4.2 provides: "The assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing." The regulation does not directly address the issue of whether assistants are required to seek pre-hearing interviews of corrections officers or whether corrections officers are obligated to submit to such interviews. The Court does not resolve this issue as any alleged failure to follow prison regulations does not give rise itself to a federal claim. *Rivera v. Wohlrab*, 232 F.Supp. 2d 117, 123 (SDNY 2002).

"[A]n assigned assistant who does nothing to assist a disabled prisoner – one who is segregated from the general prison population – has failed to accord the prisoner his limited constitutional due process right of assistance." *Id.*

In the present case, Cruz provided translation services to plaintiff, furnished him with copies and written reports related to the disciplinary proceedings, and interviewed non-staff witnesses requested by plaintiff. (Cruz Decl. Ex. B, DH 2/23/05 18, 4/20/05 24.) Cruz did not interview Officers MacIsaac, Matyas, and Austin, based on an existing practice not to "interview members of the prison staff prior to the hearing when such witnesses are available to testify at a disciplinary hearing," (Cruz Decl. ¶ 7-8.). Plaintiff has proffered no evidence that Cruz misunderstood or misapplied the existing practice regarding staff interviews. Moreover, there is no evidence to suggest that plaintiff, were he fluent in English and not disabled by SHU confinement, would have been able to interview the corrections officers. *See Eng*, 858 F.2d at 898. As such, there is no genuine issue of fact as to whether Cruz failed to "perform the investigatory tasks which the inmate, were he able, could perform for himself." *Id.* It may be argued that Greenhaven's practice of not instructing counselors to request pre-hearing interviews of staff members lacks fundamental fairness, although without a concomitant regulation requiring corrections officers to submit to interviews, such a request would likely be meaningless. In any case, the Court is hesitant to conclude on this record that due process in prison disciplinary hearings encompasses the right to pre-hearing interviews of staff employees who may be freely called to testify at the hearing. Defendants in criminal proceedings have no such right to pre-trial discovery of arresting officers, and it is well established that the due process protections afforded inmates does not equate to

"the full panoply of rights" due to a defendant in a criminal prosecution. *Wolf v. McDonnell*, 418 U.S. at, 556. Thus it would be passing strange for an inmate to enjoy such a right under the Due Process Clause.

Defendant Cruz is also entitled to summary judgment because even if Cruz's inaction violated plaintiff's constitutional rights, she would be entitled to qualified immunity as it would not be "clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." *Sira*, 380 F.3d at 68 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Luna v. Pico*, 356 F.3d at 490. Here, as Cruz attests, (Cruz Decl. ¶ 7-8.), and plaintiff does not dispute, there is a practice of not interviewing corrections officers who are available to testify at a disciplinary hearing. By acting in accordance with her training, no reasonable officer in Cruz's circumstances could conclude that her conduct was violative of the plaintiff's rights since there was in fact no clearly established rule stating otherwise. Accordingly, plaintiff's claim is barred by qualified immunity.

Additionally, the undisputed evidence in the record shows that plaintiff was not harmed by Cruz's decision not to seek interviews of the officers. This Court has held that "assuming the employee assistant provided at least *some* assistance, 'the adequacy of inmate assistance is subject to harmless error analysis.'" *Samuels v. Selsky*, 2003 WL 22439793 at *12 (S.D.N.Y. 2003); *Louis v. Ricks,* No. 01 Civ. 9368, 2002 WL 31051633, at *15 (S.D.N.Y. Sept.13, 2002); *see also Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline

for a prison rules infraction despite a harmless error in adjudicating the violation.") (citations omitted); *Sims v. Artuz,* No. 96 Civ. 0216, 2003 WL 1746263, at *14 (S.D.N.Y. Mar.31, 2003) ("[N]othing in the record indicates that any error that may have been made by [prison officials] with respect to ... the assistance rendered to [the prisoner] would have influenced the ultimate outcome of the hearing. Thus, any error that did occur was harmless, and the result of the hearing should not be disturbed.").

While plaintiff states that he "would not have called Officer MacIsaac had he known about the nature of his testimony," (Pl.'s 56.1 Statement ¶ 2.), plaintiff was already on notice of the nature of MacIsaac's testimony based on the IMR that MacIsaac had issued. Because MacIsaac testified at the ice pick hearing and was subject to examination by plaintiff and because plaintiff makes no showing that a different outcome would have obtained had he interviewed MacIsaacs beforehand, there is no basis for believing that plaintiff suffered prejudice as a result of Cruz's not having interviewed him. Similarly, there is no evidence that the failure to interview Matyas and Austin prior to the hearing on the razor incident had any effect on the outcome of that hearing, particularly in the absence of any showing that they were unavailable to testify or would have offered testimony inconsistent with that of the corrections officer who did testify. Thus, viewing the evidence in the light most favorable to the plaintiff, any alleged failure by Cruz to perform her duties as an assistant amounts to harmless error not warranting denial of summary judgment. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (denying remedy for harmless error in disciplinary hearings).

## CONCLUSION

For the reasons stated above, the motions of defendants Russet and Cruz for summary judgment are granted.

SO ORDERED.

Dated: New York, New York
August 27, 2008

_____
Richard J. Holwell
United States District Judge